UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN RUTH KASCH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 24-cv-04751-JD<br><br>**ORDER RE DISMISSAL** |

Eugene "Gus" Newport was a well-known social-justice activist, former mayor of Berkeley, California, and a veteran of the United States military. He suffered head and neck injuries during transportation from his home in Oakland, California, to a medical appointment at the U.S. Veterans Administration (VA) medical facility in San Francisco, California. Dkt. No. 33 (first amended complaint or FAC) ¶¶ 11-12, 18-19. His family members, namely his spouse Kathryn Ruth Kasch, his son Kyle Newport, and his daughter Maria Mercedes Newport, allege that the transportation company, Owl, Inc., negligently failed to secure Newport's wheelchair in its van. *Id.* ¶ 19. Newport flipped backwards while the van was in motion, which caused the trauma that eventually led to Newport's passing. *Id.* ¶¶ 18-19. The Court is advised the Newport family has a negligence lawsuit pending against Owl in California state court.

In this litigation, plaintiff family members bring wrongful death and personal injury claims against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674. They allege the VA contracted with Owl to provide transport of non-ambulatory patients, such as Newport, and did not adequately supervise and oversee Owl's performance, particularly with respect to patient safety. FAC ¶¶ 14-15, 24-25.

1    The Court dismissed the original complaint with leave to amend after the United States challenged subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See* Dkt. Nos. 20, 31. The government contended that jurisdiction was missing because the United States had not waived sovereign immunity for the negligent acts of independent contractors and the VA had hired Owl as an independent contractor. Dkt. No. 20 at 7-10. The original complaint sought to hold the United States vicariously liable for Owl's negligent actions, and so the Court dismissed it with leave to amend with respect to jurisdiction. Dkt. No. 31.

Plaintiffs filed a first amended complaint on February 13, 2025. Dkt. No. 33. The United States asks again to dismiss for lack of subject-matter jurisdiction. Dkt. No. 34. The request to dismiss is granted and denied in part.

## LEGAL STANDARDS

To recap the governing standards, a "Rule 12(b)(1) jurisdictional attack may be facial or factual. . . . [I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 951 (N.D. Cal. 2018) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). The United States raises a factual attack, and so "the Court 'may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment' and 'need not presume the truthfulness of the plaintiff's allegations.'" *Id.* at 951-52 (quoting *Safe Air*, 373 F.3d at 1039). "A jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Id.* at 952.

It is black-letter law the United States is "immune from suit unless it has expressly waived such immunity and consented to be sued." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). The FTCA waives the United States' sovereign immunity for claims "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Act excepts from waiver the actions of

2

independent contractors the government has hired.  *Id.* § 2671; *see United States v. Orleans*, 425 U.S. 807, 813-14 (1976).

**DISCUSSION**

**I.     RETAINED CONTROL**

The contract between the VA and Owl states it is "a non-personal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101, under which the professional services rendered by the Contractor . . . are rendered in its capacity as an independent contractor."  Dkt. No. 20-2 at ECF 34; *see also* Dkt. No. 20-1 at ECF 1.  Many of its provisions set expectations for the services Owl is to fulfill but leave the manner and control of the execution of those services to the discretion of Owl.  *See generally* Dkt. No. 20-2.  Consequently, Owl's actions pursuant to the contract plainly fall within the FTCA's independent-contractor exception to the waiver of sovereign immunity, *see* 28 U.S.C. § 2671, and plaintiffs do not seriously dispute the United States did not exercise "substantial supervision over the day-to-day operations of the contractor," *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005) (citation omitted); *see* Dkt. No. 35 at 1 (declaiming any vicarious-liability claims).

Even so, plaintiffs say that the government retained "supervisorial control and oversight for the operations and performance of the service by OWL" under the contract and that the United States negligently breached that duty to oversee "the OWL contract and ensure compliance with safety procedures."  FAC ¶¶ 15, 24; Dkt. No. 35 at 10.  This said to establish subject matter jurisdiction.

Not so.  Undisputed evidence about the contract undercuts plaintiffs' theory.  For example, the contract states that Owl "shall provide all personnel, management, supplies, transportation, equipment and reports necessary to provide" transportation services and "shall be responsible for using appropriate driver screening and selection criteria when employing drivers."  Dkt. No. 20-2 at ECF 5-6.  The contract charged Owl with "establish[ing] and maintain[ing] a complete [quality control plan] to assure the requirements of this contract are provided as specified."  *Id.* at ECF 13.  The VA reserved the right to "inspect" Owl's equipment and vehicles, but the inspection would "not constitute a warranty by VA that the Contractor's vehicles and equipment are properly

3

1  maintained." *Id.* at ECF 7.  A VA contracting specialist also stated in a declaration that the
2  contract did not confer to the VA the "ability to supervise the transportation of veteran patients
3  once they were placed for transport" or for "regular communication . . . during veteran transport."
4  Dkt. No. 20-1 at ECF 2.

5  Plaintiffs did not proffer opposing evidence or otherwise rebut these showings.  It is true
6  the contract provided for a "Contracting Officer Representative" (COR), whose duties included
7  "notify[ing] the Contractor of any safety non-compliance" and "providing contract oversight."
8  Dkt. No. 20-2 at ECF 6, 13.  But the contract did not give the COR authority over safety
9  requirements which "would sufficiently limit the contractor's freedom to perform the contracted
10 work in the contractor's own manner." *Sandoval v. Qualcomm Inc.*, 12 Cal. 5th 256, 275 (2021);
11 *see* Dkt. No. 20-2 at 13, 14-15 (table).  Consequently, there is no basis for concluding that the
12 United States retained under the contract the supervisorial control to "ensure compliance with
13 safety procedures." Dkt. No. 35 at 10.

## II. PECULIAR RISK

15 Plaintiffs' alternative argument fares better.  Plaintiffs say the United States owed a direct
16 and non-delegable duty to Newport under the "peculiar risk" doctrine recognized in California
17 law.  *Id.* at 4-9.  In general terms, the doctrine provides that the hirer of an independent contractor
18 has a duty "to ensure that an independent contractor takes adequate safety precautions [when] the
19 work to be performed involves" a "peculiar risk." *Myers v. United States*, 652 F.3d 1021, 1034
20 (9th Cir. 2011); *Privette v. Superior Court*, 5 Cal. 4th 689, 695 (1993).  Plaintiffs contend the
21 transportation of a non-ambulatory individual while in a wheelchair is work that involved such a
22 risk or, at least, whether it does involve a peculiar risk is a question for the trier of facts. Dkt.
23 No. 35 at 7-9.

24 The point is well taken.  For a risk to be peculiar, it need not "be one which is abnormal to
25 the type of work done, or that it must be an abnormally great risk.  It has reference only to a
26 special, recognizable danger arising out of the work itself." *Am. States Ins. Co. v. Progressive
27 Cas. Ins. Co.*, 180 Cal. App. 4th 18, 30 (2009) (citation omitted).  "It is sufficient that it is a risk
28 which the employer should recognize as likely to arise in the course of the ordinary and usual

4

1  method of the work, or the particular method which the employer knows that the contractor will
2  adopt." *Toland v. Sunland Housing Grp., Inc.*, 18 Cal. 4th 253, 258 (1998) (citation omitted).
3  The hirer of an independent contractor may be held liable under this doctrine under one of two
4  theories: (1) the hirer's "omission to provide for special precautions in the contract or in some
5  other manner" or (2) "the failure of the contractor to exercise reasonable care to take such
6  precautions, even though the [hirer] has provided for such precautions in the contract or
7  otherwise." *Id.* at 259-60 (citations omitted).  The doctrine has an important limitation, which is
8  that liability will not attach for "injury to others if the injury results from the contractor's
9  'collateral' or 'casual' negligence." *Id.* at 258-59 (quoting *Aceves v. Regal Pale Brewing Co.*, 24
10 Cal. 3d 502, 510 (1979)).  "[T]he peculiar risk of harm must be inherent in the work itself, and
11 arise out of its character," *Hughes v. Atl. Pac. Construct. Co.*, 194 Cal. App. 3d 987, 1000 (1987),
12 or in other words, "[n]egligence is collateral when it involves an 'operative detail of the work, as
13 distinguished from the general plan or method to be followed.'" *Toland*, 18 Cal. 4th at 259
14 (quoting *Aceves*, 24 Cal. 3d at 510).  California case law makes clear the inquiry into whether
15 work posed a "peculiar risk" is "essentially factual." *MacKey v. Campbell Construct. Co.*, 101
16 Cal. App. 3d 774, 786 (1980); *see also, e.g.*, *Ruckman v. Wildwood Farms, LLC*, 2021 WL
17 2197853, at *8 (Cal. Ct. App. June 1, 2021); *Caudel v. East Bay Mun. Util. Dist.*, 165 Cal. App.
18 3d 1, 9 (1985).

19         At this early stage of the case, and without the benefit of a developed evidentiary record,
20 the Court cannot say whether the transportation of non-ambulatory individuals in wheelchairs does
21 or does not pose a risk that is "recognizable or identifiable," *Salinero v. Pon*, 124 Cal. App. 3d
22 120, 137 (1981), and "against which a reasonable person would recognize the necessity of taking
23 special precautions," *Caudel*, 165 Cal. App. 3d at 6-7 (citation omitted).  "[T]he 'peculiar risk'
24 doctrine depends upon the particular facts developed on a case-by-case basis." *Hughes*, 194 Cal.
25 App. 3d at 998.  As the Supreme Court of California has observed, "the line to be drawn between"
26 risks which are collateral and those which are inherent in the work "is 'shadowy.'" *Toland*, 18
27 Cal. 4th at 259 (quoting *Van Arsdale v. Hollinger*, 68 Cal. 2d 245, 252 (1968)).  For the same
28 reasons, the Court also cannot say whether the injuries Newport sustained were because of

negligence flowing from the peculiar risk or merely an "operative detail of the work." *Id.* (quoting *Aceves*, 24 Cal. 3d at 510).

Because the answers to these jurisdictional questions overlap with facts and evidence on the merits, the Court declines to dismiss the case at this time on the jurisdictional ground urged by the United States. *See Patel*, 290 F. Supp. 3d at 952. It bears emphasis the fact that the transportation of Newport involved a tragic accident does not, in itself, show that the transportation necessarily posed a peculiar risk. Bad things can happen in ordinary circumstances. The critical factor is that a developed record is needed to decide the application of the peculiar risk doctrine, and whether the alleged negligence was collateral or inherent, for purposes of testing jurisdiction. It is entirely possible that expert testimony will be necessary to answer questions about the risks of transporting non-ambulatory individuals in wheelchairs.

The United States attempts to resist the conclusion on several grounds, but none carry the day for it. It says the peculiar risk doctrine concerns only situations where "a contractor has failed to provide a safe workplace for its own employees." Dkt. No. 34 at 12 (emphasis omitted). This comment is unsupported and cannot be squared with California cases applying the doctrine where a contractor's actions injured unrelated third parties. *See, e.g.*, *Ruckman*, 2021 WL 2197853 (suit by injured neighbors); *Bowman v. Wyatt*, 186 Cal. App. 4th 286 (2010) (suit by motorcyclist ran over by contractor's dump truck); *Am. States*, 180 Cal. App. 4th 18 (dump truck ran over unrelated pedestrian); *see also Toland*, 18 Cal. 4th at 260 ("[T]he doctrine of peculiar risk . . . serves to ensure a source of tort recovery for innocent bystanders or neighboring landowners.").

The United States says that the Ninth Circuit has foreclosed plaintiffs' theory by holding that "a principal may delegate its duty to supervise the safety precautions of its contractor." Dkt. No. 34 at 12-13 (citing *Yanez v. United States*, 63 F.3d 870, 873 (9th Cir. 1995)). But *Yanez* held only that "[a]fter *Privette*, California permits a principal to delegate its duty to provide a reasonably safe work place *to its contractor's employees*, even where 'peculiar risks' are involved." 63 F.3d at 873 (emphasis added). There is no evidence Newport was an Owl employee, and the government's overbroad reading of *Yanez* again cannot be squared with the above-cited California cases.

6

   The government also says that a peculiar risk does not exist where the "risks involved with the contractor's work are not unusually dangerous." Dkt. No. 34 at 13. This simply begs the question of whether the transportation provided by Owl under its contract with the VA posed a peculiar risk. California law is clear the risk need only be "a special, recognizable danger arising out of the work itself" and not "abnormally great" or "abnormal to the type of work done." *Privette*, 5 Cal. 4th at 695 (cleaned up) (citation omitted). The smattering of federal district court rulings that comment differently, which the government mentions, Dkt. No. 34 at 13:8-16, does not furnish a basis for disregarding the Supreme Court of California.

   Generalizing Owl's work as "driving" *id.* at 13, does not improve the position of the United States. As the California courts have noted in a related context: "[T]he question was not whether trenching work involved a peculiar risk in the abstract, but whether the particular trenching work at the particular time in question involved a peculiar risk of injury." *MacKey*, 101 Cal. App. 3d at 786-87 (citing *Griesel v. Dart Indus., Inc.*, 23 Cal. 3d 578, 587 (1979), *abrogated on other grounds by Privette*, 5 Cal. 4th 689)). Cases saying that there is nothing peculiarly dangerous about driving in general are not instructive about whether driving with a person who is non-ambulatory and while they are in a wheelchair "a special risk . . . against which a reasonable man would recognize the necessity of taking special precautions." *Am. States*, 180 Cal. App. 4th at 31.

   As a closing observation on peculiar risks, the doctrine has at times been discussed as a variant of vicarious liability. *See, e.g.*, *Toland*, 18 Cal. 4th at 260. The Ninth Circuit, in decisions post-dating those discussions, has stated in FTCA cases that the peculiar risk doctrine "has been construed as creating direct liability for the government's nondelegable duty to ensure that the contractor employs proper safety procedures." *Yanez*, 63 F.3d at 872 n.1; *see Edison v. United States*, 822 F.3d 510, 518 n.4 (9th Cir. 2016); *Myers*, 652 F.3d at 1034. Without acknowledging those cases, the United States says that "[t]o the extent lower courts have suggested that state-law doctrines such as 'peculiar risk' could impose liability . . . for the acts of contractors whom the government does not substantially control, those decisions run counter to the Supreme Court's

holdings." Dkt. No. 34 at 13 n.5. But the Court may not disregard binding circuit precedent because the government disagrees with it.

### III.  OTHER ISSUES

The government stuffs into a footnote a cursory comment to the effect that the discretionary function exception bars plaintiffs' claims even if there is a non-delegable duty. Dkt. No. 34 at 14 n.6 (citing 28 U.S.C. § 2680(a)). The Court declines to do the government's work of making a meaningful argument out of this passing remark. The government suggests in another footnote that the FAC does not a state a claim upon which relief can be granted. *Id.* at 12 n.4 (citing Fed. R. Civ. P. 12(b)(6)). This, too, was totally undeveloped in any useful way and will not be taken up here.

## CONCLUSION

Plaintiffs' second and fourth claims for relief, which are premised on duties the United States is alleged to have retained under the contract, are dismissed with prejudice. Plaintiffs had an opportunity to cure the deficiency identified in this order, and further opportunities are not likely to change the result. *See The Louis D. Brandeis Ctr., Inc. v. Regents of the Univ. of Cal.*, No. 23-cv-06133-JD, 2025 WL 974983, at *2 (N.D. Cal. Mar. 31, 2025). The two claims for negligence and wrongful death based on an alleged non-delegable duty the United States directly owed to Newport may proceed. The parties are to jointly file a proposed case-management schedule by April 17, 2025.

**IT IS SO ORDERED.**

Dated: April 10, 2025

JAMES DONATO
United States District Judge